IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYRELL JONES,<br><br>    Petitioner,<br><br> v.<br><br>THERESA DELBASO, et al.,<br><br>    Defendants. | CIVIL ACTION<br>NO. 16-5634 |

**OPINION**

**Slomsky, J.**                                            May 21, 2019

**I. INTRODUCTION**

Before the Court is the pro se Petition of Tyrell Jones ("Petitioner" or "Jones"), a state prisoner, for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. Nos. 1, 10.) United States Magistrate Judge Carol Sandra Moore Wells ("Magistrate Judge") issued a Report and Recommendation ("R&R"), recommending that the Petition be denied and that a certificate of appealability not be issued. (Doc. No. 13.) On December 31, 2018, Petitioner filed Objections to the R&R. (Doc. No. 17.) For reasons that follow, the Court will approve and adopt the R&R (Doc. No. 13) in its entirety, and will deny the Petition (Doc. Nos. 1, 10).[1]

**II. BACKGROUND**

The Pennsylvania Superior Court ("Superior Court") summarized the facts of Petitioner's case as follows:

> On July 9, 2007, [Petitioner], Richard Bermudez, Andres Morales, Carlos Bermudez, and Efrain Molina planned the armed robbery of Christian Oliveras, who was a drug dealer living at 317 South Adams Street, West Chester. Richard Bermudez and Molina, a frequent customer of Oliveras, orchestrated the crime

---

[1] On October 27, 2016, Jones filed his Petition. (Doc. No. 1.) He later amended the Petition on September 12, 2018. (Doc. No. 10.)

1

while Carlos Bermudez obtained the gun. Molina cased the home and reported to his co-conspirators. [Petitioner] and Morales entered the home with the weapon. Oliveras was in bed with his girlfriend and their baby and, after he resisted the armed robbers, was shot and killed.

West Chester County Detective Louis John DeShullo was involved in the murdered investigation. Based on the descriptions given of the two perpetrators who entered the home and the fact that Richard Bermudez's cell phone records indicated that he had called [Petitioner] on the night of the crime, Detective DeShullo interviewed [Petitioner] on August 2, 2007. At that time, [Petitioner] told Detective DeShullo that he heard that a man named Trent Jackson committed the crime. Jackson was a suspect early in the investigation and his arrest for the murder had been reported in the newspaper.

[Petitioner] admitted to Detective DeShullo that he had been friends with Morales, but claimed that they recently had an argument. [Petitioner] explained that Richard Bermudez called him on the night of the murder because Richard had asked [Petitioner] to obtain drugs for him. [Petitioner] never informed Detective DeShullo that he owed Richard Bermudez money nor did [Petitioner] tell the detective that Richard threatened him. At one point, Detective DeShullo said that he understood if [Petitioner] was afraid to cooperate in the investigation, and [Petitioner] replied that "he wasn't afraid and that he would assist law enforcement if he could." N.T. Trial, 1/12/10, at 128. When the detective asked if [Petitioner] would assist him even if someone contacted him, [Petitioner] responded, "I ain't scared of nobody. I don't care." (citation omitted).

West Chester County Detective McGinnis was also involved in the investigation. He conducted an investigation into [Petitioner's] telephone records and testified that on July 8, 2007, [Petitioner] and Richard Bermudez communicated with each other ten times. In the twenty-four hour window covering the time of the murder, [Petitioner] spoke with Morales thirty-two times before this incident and seven times afterwards. After the murder, [Petitioner] had a long conversation with a male friend and spoke with a girlfriend.

West Chester Borough Detective Corporal Scott Whiteside testified as follows:

> He questioned [Petitioner] after the August 2, 2007 interview by Detective DeShullo. By that time, [Petitioner] had become a suspect and was read his Miranda rights. After waiving those rights, [Petitioner] acknowledged that Richard Bermudez generated the plan to commit armed robbery and decided that since Oliveras knew Richard, someone else needed to enter the victim's home. [Petitioner] related to police that at that point, [Petitioner] contacted Morales as Richard's direction. [Petitioner], Morales, and Carlos and Richard Bermudez drove to the crime scene.

> [Petitioner] admitted to Detective Whiteside that he was handed a gun while he was in the car and that Richard and Carlos remained in the front seat of the car while he and Morales approached the house. [Petitioner] and Morales saw some people around the area and went for a walk. [Petitioner] confessed that he then entered the house wearing gloves and a mask. Morales was with [Petitioner], and they fled back to the car after the shooting. [Petitioner] said that when he and Morales arrived back at the car, Molina was seated in the rear. [Petitioner] never mentioned duress to Detective Whiteside. N.T. Trial 1/13/10, at 88.
>
> In his defense, [Petitioner] claimed that he acted under duress because he owed Richard Bermudez money, and Richard, who was armed, threatened [Petitioner] and his family if [Petitioner] did not help him rob Oliveras. [Petitioner] also testified that he entered the home with Richard Bermudez and that Richard shot Oliveras. [Petitioner] represented that he did not try to escape because he was afraid of Richard, who knew where he and his family lived. The jury rejected the duress defense and convicted [Petitioner] of the above-described crimes.

Commonwealth v. Jones, 38 A.3d 911 (Pa. Super. Ct. Nov. 4, 2011) (Table).

On April 5, 2010, the trial court sentenced Petitioner to life imprisonment without parole for second degree murder and an additional five to ten-year term for robbery. (Doc. No. 8 at 7.) Petitioner appealed, and the Superior Court affirmed his judgement of sentence on November 4, 2011. (Doc. No. 1-2 at 8-19.) On April 26, 2013, the Supreme Court of Pennsylvania denied allowance of appeal. Commonwealth v. Jones, 67 A.3d 794 (Pa. 2013). Petitioner did not seek certiorari in the United States Supreme Court. (Doc. No. 1 at 3.)

Subsequently, on February 15, 2012, Jones filed a petition for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541, et seq. (Doc. No. 13 at 4.) It was denied without prejudice because his appeal was still pending before the Pennsylvania Superior Court. (Id.) Jones timely filed a second PCRA Petition on July 2, 2014. (Doc. No. 1-2 at 8-19.) On April 7, 2015, his counsel filed an Amended PCRA petition, which was later denied on August 11, 2015. (Id.)

On June 9, 2016, the Superior Court affirmed the PCRA court's decision. (Id. at 5.) Months later, the Pennsylvania Supreme Court denied Petitioner's request for review. Jones did

not seek certiorari in the United States Supreme Court. (Id.) On October 24, 2016, Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, asserting the following claims:

> Ground One: Whether the evidence was insufficient to sustain the conviction on all counts where, viewing the evidence in the light most favorable to the Commonwealth, the prosecution failed to disprove, beyond a reasonable doubt, the defense of duress raised by the [Petitioner] at trial?
>
> Ground Two: Whether the trial court erred in instructing the jury as to the legal definition of term "reckless" in the context of the jury instruction on the defense of duress such that the jury was incapable of understanding and analyzing the defense of duress and whether or not the [petitioner] recklessly placed himself in the situation such that would be subject to duress, where the instruction did not contain the definition of the term "recklessly" as set forth in 18 Pa. C.S. § 302?
>
> Ground Three: Whether trial counsel was ineffective for failing to object to the trial judge's charge to the jury on the defense of duress which was erroneous because the judge told the jury that "if the evidence matches up with the elements of the offense . . . you should find him guilty . . . if they do line up and find duress, he again is guilty"?
>
> Ground Four: Trial counsel was ineffective for failing to object to an incorrect response by the trial judge to a question by the jury asking to define duress, because the judge told that that if duress is found, the jury may find [Petitioner] not guilty. The judge should have instructed the jury that if duress is found, then they must find [Petitioner] not guilty.
>
> Ground Five: Because of the defense theory at trial (i.e. duress) and the fact that the cause and manner of the decedent's death wasn't contested, there was no reason to show the jury the post-mortem photo[s] of the decedent on an overhead projector and (for other related crime scene photo[s]) to "dim the lights" for the same. (N.T. 1/12/10 @10-37, Commonwealth's Exhibit[s] 64-71, and 1/11/10 @ 43, 1-8). As a result, Petitioner's position is that his rights to a fair trial were violated by the introduction of these inflammatory autopsy photo[s] that had no essential evidentiary value. Therefore, defense counsel was ineffective for failing to object (and/or file a pre-trial in limine motion to exclude evidence) to the admission of those evidentiary "lacking" photo[s].
>
> Ground Six: Petitioner should be entitled to re-sentencing, under Miller v. Alabama, in connection with the reasoning of Roper v. Simmons and Graham v. Florida (i.e. those "salient characteristics"), especially in light of Montgomery v. Louisiana, because mandatory LWOP sentences for individuals 18 years old at the

time of offense, violate 8th amendment [sic], Article 5 of the Universal Declaration of Human Rights, as well as Article I, § 13 of the Pa. Constitution.

Ground Seven: The Petitioner was convicted of 2nd and 3rd degree murder, despite the fact that he wasn't the actual killer. Could that have been because of the unclear jury instructions on 2nd and 3rd degree murder? The way the judge explained to them, they sounded like the same thing. Is there any error related to these instructions?

Ground Eight: My trial lawyer was precluded from eliciting testimony from [Detective Corporal] Whiteside that the other 3 defendant[s] involved in this case, all plead [sic] guilty and agreed to cooperate with the prosecution. Is there any error related to this? N.T. 1/13/10 @ 163-64.

Ground Nine: The petitioner testified at his trial in his own defense. After direct examination by trial counsel, the district attorney vigorously cross-examined him. But his lawyer didn't do any re-direct. Is there any error on this? N.T. 1/31/10 @ 163-64.

(Doc. No. 1 at 34-41; Doc. No. 1-2 at 20-27.) On September 12, 2018, Jones amended the Petition to revise his resentencing claim in Ground 6.[2] (Doc. No. 10.) On October 31, 2018, Magistrate Judge Wells issued an R&R recommending that the Petition be denied and that a certificate of appealability not be issued. (Doc. No. 13.) On December 31, 2018, Petitioner filed Objections to the R&R (Doc. No. 17), which are now before the Court for review.

### III. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge may designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief. See § 636(b)(1)(B); E.D. Pa. Civ. R. 72.1. Any party may file objections in response to the magistrate judge's report and recommendation. § 636(b)(1)(C). Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the

---

[2] In the R&R, the Magistrate Judge rejected the sole claim raised in the Amended Petition. (Doc. No. 13.) Petitioner did not mention it again in his Objections. (Doc. No. 17.)

findings of recommendations made by the magistrate judge with further instructions." Id. "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation. E.D. Pa. Civ. R. 72.1. Under that rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012). For pro se litigants, however, this rule may be relaxed. See McCabe v. Pennsylvania, 419 F. Supp. 2d 692, 695 (E.D. Pa. 2006) (treating pro se litigant's letter to court as an objection).

The district judge "shall [then] make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The] judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

IV. ANALYSIS

As noted, the Petition raised nine claims. In the R&R the Magistrate Judge reasoned that Grounds Two, Six, Seven, and Eight were not cognizable; Grounds Five and Nine were unexhausted and procedurally defaulted; and Grounds One, Three, and Four lacked merit. (See Doc. No. 13.)

6

Petitioner poses the following in his Objections:

1. Regarding ground 1, was the USMJ's finding that "the court appears to have applied a standard inconsistent with Jackson," correct?

2. Regarding grounds 3-4, was the USMJ's finding that both of these claims were reasonably rejected by the Superior Court correct, when (1) the final charge to the jury conveyed a misstatement of the law and (2) when allegedly remedied in response to a jury question, the trial court conveyed another misstatement of the law, the difference being between the words "may" (conveying that an option exists) and "must" (conveying a requirement)?

3. Regarding ground 5, the USMJ found that Petitioner didn't explain how the admission of the autopsy photo's [sic] prejudiced the outcome of his trial. Here, Petitioner requests the appointment of counsel, who may can [sic] explain how the prejudicial nature of the photo's [sic] caused the jury to reject his duress defense and find him guilty, especially in light of the 2 misstatements of the law regarding duress mentioned above in objection no. 2.

4. Regarding ground 6, the USMJ found that resentencing under Miller wasn't warranted because Petitioner was 19 years old at the time of the crime. However, (1) Petitioner was 18 years and 9 months old at the time of the crime and (2) there isn't any SCOTUS precedent "that would preclude this Court from applying Miller to an 18 year old." Cruz v. United States, 2018 WL 15411898 (2d Cir. 2018). Here, Petitioner requests the appointment of counsel to flesh out this claim.

5. Regarding ground 8, the USMJ determined the claim as raising a stand-alone PCRA counsel ineffectiveness claim as a basis for relief, whereas habeas relief isn't available for claims of this sort. However, the claim should be read as PCRA counsel provided ineffective assistance by failing to raise the issue that trial counsel was ineffective for failing to object to the trial court's decision to preclude counsel from eliciting this information (in violation of due process and the 6th & 14th Amendments) and raising that error on appeal (had the trial court overruled the objection). Here, Petitioner requests the appointment of counsel to flesh out this claim.

(Doc. No. 17 at 1-2.) The Court will address each Objection in turn.

### A. Petitioner's First Objection Regarding the Superior Court's Application Of Jackson v. Virginia Is Without Merit

As discussed in the R&R, Petitioner's claim challenging the sufficiency of the evidence presented at trial is governed by Jackson v. Virginia, 443 U.S. 307 (1979). Petitioner objects to the Magistrate Judge's conclusion that the Superior Court applied a standard consistent with

Jackson when reviewing the sufficiency of evidence presented at his trial. (Doc. No. 17.) Specifically, he contends that evidence presented at trial was insufficient to disprove his defense of duress beyond a reasonable doubt. This issue was presented on direct appeal and rejected by the state appellate court. For the following reasons, the Court agrees with the R&R that the Superior Court applied a standard consistent with Jackson.

Under Jackson,

> [T]he critical inquiry on review of the sufficiency of evidence to support a criminal conviction . . . does not require a court to "ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt" . . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as a weigher of the evidence is preserved through a legal conclusion that upon judicial review, all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury discretion only to the extent necessary to guarantee the fundamental protection of due process of law."

Jackson, 443 U.S. 307 at 319.

The elements of duress are defined by state law. A defendant is permitted to avail himself of the defense of duress if he or she:

> engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.

18 Pa.C.S. § 309. According to Pennsylvania courts, to establish the defense of duress, a defendant must show "(1) an immediate or imminent threat of death or serious bodily injury; (2) a well-grounded or reasonable fear that the threat will be carried out; and (3) no reasonable opportunity to escape the threatened harm except by committing the criminal act." Commonwealth v. Bozic,

997 A.2d 1211, 1225 (Pa. Super. Ct. 2010) (quoting Commonwealth v. Baskerville, 681 A.2d 195, 200 (Pa. Super. Ct. 1996)).

In rejecting Petitioner's argument, the Superior Court of Pennsylvania explained:

> In the present case, we conclude that the evidence was sufficient to satisfy [the Commonwealth's burden. After the crime, [Petitioner] telephoned several people, none of whom was a family member. [Petitioner] never turned himself in to police and made two statements to them. In one, he represented that he was not afraid to help police and, specifically, that he was not frightened of anyone who was involved in the commission of the murder. In the second statement, he never claimed to have acted because he feared Richard Bermudez or made any representations of being under duress. Furthermore, [Petitioner's] trial testimony that Richard Bermudez perpetrated the shooting was directly refuted by his statement to Detective Whiteside, wherein he said that Richard Bermudez remained in the car while he and Morales entered the Oliveras residence to rob the victim. Hence, we reject [Petitioner's] position that the Commonwealth's evidence failed to prove beyond a reasonable doubt that he did not act due to threats from Richard Bermudez.

Commonwealth v. Jones, 38 A.3d 911 (Pa. Super. Ct. Nov. 4, 2011) (Table). In light of the evidence presented, the Superior Court concluded that Petitioner's sufficiency of evidence claim was without merit. Id. As explained in the R&R, although the Superior Court did not cite or explicitly use the Jackson analysis in its decision, the record demonstrates that it applied a sufficiency of the evidence standard indistinguishable from the Jackson standard.

Considering this standard, and viewing the evidence in the light most favorable to the Commonwealth, the evidence was sufficient to rebut Petitioner's duress defense. Given the facts above, a rational factfinder could have found that Petitioner was not acting under the immediate or imminent threat of death or serious bodily injury. Evidence adduced at trial reveals that Petitioner clearly stated "he was not afraid to help police and . . . he was not frightened of anyone who was involved in the commission of the murder." In addition, Petitioner did not set forth any evidence to show that he was acting under duress. Therefore, it follows that the state court's conclusion was a reasonable determination of the facts in light of the evidence presented, and was

9

neither contrary to, nor an unreasonable application of, clearly established federal law. Thus, habeas relief on this claim will be denied.

### B. Petitioner's Second Objection Lacks Merit Because The Superior Court Reasonably Determined That Petitioner Had Not Met The Strickland Test For Proving Ineffective Assistance Of Counsel

In Petitioner's second Objection, he contends that the Magistrate Judge erred in finding that trial counsel was not ineffective for failing to object to erroneous jury instructions at trial. The pertinent jury instruction stated:

> [i]f the evidence matches up with the elements of the offense, the defendant is no longer presumed innocent, you should find him guilty. If they do not line up, then he must be found not guilty. If they do line up and you find duress, he, again, is guilty.

Commonwealth v. Jones, 38 A.3d 911 (Pa. Super. Ct. Nov. 4, 2011) (Table). Later, in response to a jury question during deliberation, the trial court told the jury that if it found duress, Petitioner "may be found not guilty." Id. at 11. Petitioner contends that the instruction was incorrect because duress is a complete defense, and therefore, the trial court should have instructed the jury that if it found duress, it was required to find Petitioner not guilty. (Doc. No. 1-1 at 40-41.) He further claims that the instruction was inconsistent with the other duress instructions and "could reasonably have caused confusion by the jury when examining the duress defense which was critical to [his] overall strategy." (Id. at 41.)

There is no dispute that the jury instruction initially reflected the law inaccurately. (Doc. No. 8 at 31.) Rather, the Commonwealth opposed Petitioner's contention because even though a part of the trial transcript was inaccurate, the trial court accurately instructed the jury on other occasions concerning the defense of duress. (Id.) The Superior Court agreed and ruled that counsel was not ineffective for not objecting to the erroneous instruction because after viewing the jury instructions as a whole, it was apparent that the court adequately clarified the error by informing

the jury in other parts of the instruction that if it found duress, it should find Petitioner not guilty. (Doc. No. 8-1 at 166-167.)

It specifically concluded:

[w]hen we view the instruction as a whole, we conclude that this one misstatement is not prejudicial because the trial court repeatedly and extensively explained that duress was a defense to all of the crimes charged.

Commonwealth v. Jones, 38 A.3d 911 (Pa. Super. Ct. Nov. 4, 2011) (Table). The Superior Court further explained that the difference between "may" and "must" in response to this particular jury question was inconsequential. Id. (citing Commonwealth v. Trill, 543 A.2d 1106, 1114 (Pa. Super. Ct. 1988) (finding the "distinction between 'may' and 'will' . . . to be specious and concluding that two misstatements of the law in over thirty-one pages of jury charges are not prejudicial because the trial court correctly recited the law in other portions of the colloquy and "[i]t would be fatuous to require a trial judge to perform such a lengthy charge flawlessly on each attempt[]."))

When addressing the merits of ineffective assistance of counsel claims on habeas review, the "clearly established federal law" applicable to such claims is the familiar two-pronged inquiry articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Williams v. Taylor, 529 U.S. 362, 363 (2000). In Strickland, the United States Supreme Court held that to prevail on an ineffective assistance of counsel claim, a petitioner must meet two requirements: (1) he must show "that counsel made errors so serious" that were "outside the wide range of professionally competent assistance"; and (2) he "must show that the deficient performance prejudiced the defense" and was "so serious as to deprive [him] a fair trial." Id. at 687-690. Notably, in reviewing ineffective assistance of counsel claims, a court must defer to counsel's tactical decisions, thereby avoiding "the distorting effects of hindsight." Strickland, 466 U.S. at 689. To that end, "a court must indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal citation omitted).

When a federal court reviews the state court's rejection of a petitioner's ineffective assistance of counsel claim pursuant to 28 U.S.C. § 2254, it must be "highly deferential" to the state court's decision unless that decision is contrary to clearly established federal law, or it is objectively unreasonable. Renico v. Lett, 559 U.S. 766, 773 (2010); Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell v. Cone, 535 U.S. 685, 698-99 (2002). In this regard, a petitioner must demonstrate that the state court decision "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified" under Strickland. Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000) (citing Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999)).

Upon review of the record, the Superior Court's conclusion was not "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2).[3] As

---

[3] 28 U.S.C. § 2254(d) provides:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

explained, despite one mistake, the jury instructions as a whole, including clarification to the mistake, extensively explained the defense of duress. Commonwealth v. Jones, 38 A.3d 911 (Pa. Super. Ct. Nov. 4, 2011) (Table). Accordingly, this Court must defer to the state court conclusion that the jury instruction was proper under state law. As such, under Strickland, the trial attorney's failure to object to the jury instructions does not constitute ineffective counsel. 466 U.S. 668 at 687-690. Therefore, Petitioner's claim does not meet the deferential standard required under 28 U.S.C. § 2254(d). For these reasons, Petitioner's second Objection lacks merit and is overruled.

### C. Petitioner's Third, Fourth, And Fifth Objections Will Be Overruled Because He Is Not Entitled to Appointment of Counsel

Petitioner's Third, Fourth and Fifth Objections request the appointment of counsel to help "flesh out" claims in the Petition. (Doc. No. 17.) In particular, he seeks the appointment of counsel to explain (1) the prejudicial nature of the autopsy photos shown to the jury; (2) his claim under Miller v. Alabama; and (3) his ineffective assistance of counsel claim. (Doc. No. 17 at 1-2.) Each of these Objections will be overruled.

Importantly, there is no constitutional right to counsel in a federal habeas corpus proceeding. Reese v. Fulcomer, 946 F.2d 247, 263 (3d Cir. 1991) In Reese, the Third Circuit explained:

> Any person seeking relief under § 2254 may be granted counsel, however, whenever the United States magistrate or the court determines that the interests of justice so require and such person is financially unable to obtain representation. Under these guidelines, the district court must first decide if the petitioner has presented a nonfrivolous claim and if the appointment of counsel will benefit the petitioner and the court. Factors influencing a court's decision include the complexity of the factual and legal issues in the case, as well as the pro se petitioner's ability to investigate facts and present claims.

Id. (citations omitted).

Under these guidelines, counsel may be appointed where a pro se prisoner in a habeas action has made a colorable claim, but lacks the means to adequately investigate, prepare, or

present the claim. Id. For the following reasons, the interests of justice do not require the appointment of counsel in the present matter.

### 1. Third and Fifth Objections

Petitioner's Third and Fifth Objections request the appointment of counsel to reargue claims that were already decided by the Magistrate Judge and explained in the R&R. Specifically, in his Third Objection, Petitioner requested the appointment of counsel to explain "how the admission of the autopsy photo's [sic] prejudiced the outcome of his trial. . . . [and] . . . caused the jury to reject his duress defense and find him guilty . . ." (Doc. No. 17 at 1.) His Fifth Objection is a request for the Court to appoint counsel to reargue his ineffectiveness claim. Petitioner believes "the claim should be read as PCRA counsel provided ineffective assistance by failing to raise the issue that trial counsel was ineffective for failing to object to the trial court's decision to preclude counsel from eliciting this information . . . and raising that error on appeal . . . ."

These Objections do not raise colorable claims that could be investigated, prepared or presented at an evidentiary hearing. Moreover, Petitioner does not present new facts or evidence that the Magistrate Judge has not already considered in the R&R. Therefore, the interests of justice do not warrant the Court's discretionary appointment of counsel.

### 2. Fourth Objection

In his Fourth Objection, Petitioner requests the appointment of counsel to dispute the Magistrate Judge's finding that resentencing under Miller v. Alabama was not warranted because of his age on the date of the crime. 567 U.S. 460, 489 (2012).[4] Habeas relief will be denied with respect to this Objection because the Court would only consider resentencing under Miller if

---

4    In Miller, the Supreme Court held that mandatory life sentences without parole for minors under the age of eighteen at the time they committed their crimes violates the Eighth Amendment's prohibition on "cruel and unusual punishments." Id.

Petitioner was under the age of eighteen on the date he committed the crime. Because Petitioner was born on October 3, 1988, he was eighteen years old when he committed the crime on July 8, 2007. See Commonwealth v. Jones, No. 1230 EDA 2015, 2016 WL 3198306 at *1 (Pa. Super. Ct. June 9, 2016); see also (Doc. No. 13 at 8 n. 8.) Although his Objection correctly points out that the Magistrate Judge erred in the R&R by stating he was "19 on the date the crime occurred," this error is immaterial. (Id.) Thus, Petitioner's Fourth Objection will be overruled.

### D. Petitioner Is Not Entitled To A Certificate of Appealability

Finally, a certificate of appealability will not be issued. The petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Based on the Court's analysis, a reasonable jurist could not conclude that the Court is incorrect in denying and dismissing the Amended Petition for Writ of Habeas Corpus. See 28 U.S.C. § 2253(c)(2).

## V. CONCLUSION

For the foregoing reasons, the Court will adopt Magistrate Judge Wells's Report and Recommendation (Doc. No. 13) and will deny the Petition for Writ of Habeas Corpus (Doc. No. 1). An appropriate Order follows.