IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TYRELL JONES,

                    Petitioner,

    v.

THERESA DELBASO, et al.,

                    Respondents.

CIVIL ACTION
NO. 16-5634

## OPINION

**Slomsky, J.**                                              **February 10, 2026**

## TABLE OF CONTENTS

I.  **INTRODUCTION** ...................................................................................................................... 3

II.  **BACKGROUND** ..................................................................................................................... 3

III.  **STANDARD OF REVIEW** ................................................................................................... 5

  A.  Magistrate Judge's Report and Recommendation ................................................................ 5

  B.  Merits Review ...................................................................................................................... 6

  C.  Ineffective Assistance of Counsel ....................................................................................... 8

IV.  **ANALYSIS** .............................................................................................................................. 10

  A. Petitioner was not Harmed by the Defective Second-Degree Murder Instruction ...............11

    1. Magistrate Judge Carol Wells' Holding that the Trial Court's Error was Harmless

      is Correct.................................................................................................................................11

  B.  Petitioner's Ineffective Assistance of Counsel Claims are Meritless ................................. 17

    1.  Claimed Instructional Error:  Defining Elements and Burden of Proof ...................... 17

2.    Claimed Instructional Error:  Invading Province of Jury.............................................. 18

3.    Claimed Instructional Error:  Second-Degree Murder.................................................. 20

4.    Claimed Instructional Error:  Burden of Proof for Defense of Duress......................... 23

5.    Claimed Instructional Error:  Failure to Maintain Neutrality ...................................... 24

C.    Reasonable Jurists would not Debate the Denial of Petitioner's Ineffective Assistance of

Counsel Claim.................................................................................................................. 25

**V.    CONCLUSION** ....................................................................................................................... 25

## I.    INTRODUCTION

Before the Court is an Amended Petition for a Writ of Habeas Corpus (the "Amended Petition") filed pursuant to 28 U.S.C. § 2254 by Tyrell Jones ("Petitioner").  (Doc. No. 34.)  On September 12, 2025, United States Magistrate Judge Carol Sandra Moore Wells issued a Report and Recommendation ("R&R"), recommending that the Amended Petition be denied and that a Certificate of Appealability not be issued.  (Doc. No. 40.)  On October 10, 2025, Petitioner filed objections to the R&R.  (Doc. No. 43.)

For the reasons set forth below, the Court will approve and adopt the R&R (Doc. No. 40) and deny the Amended Petition.  (Doc. No. 34).  In addition, a Certificate of Appealability will not be issued.

## II.    BACKGROUND

On January 14, 2010, following a jury trial in the Court of Common Pleas of Chester County, Pennsylvania, Petitioner was convicted of second-degree murder, third-degree murder, first-degree robbery, and criminal conspiracy with the object of the conspiracy being robbery. (Doc. No. 34 at 14.)  On April 5, 2010, Petitioner was sentenced to mandatory life imprisonment without parole for the second-degree murder conviction, with no further penalty being imposed for the third-degree murder conviction.  (Id.)  He also was sentenced to 5 to 10 years imprisonment on the remaining convictions to run concurrently with the life sentence.  (State Court Record, Dkt. CP-15-CR-0004523-2007).  The facts underlying the charges are summarized in the R&R as follows:

> On July 9, 2007, Petitioner—who was 18 years old at the time— along with four other men, planned and executed an armed robbery at the home of Christian Oliveras, a drug dealer, in West Chester, Pennsylvania. Petitioner and another man entered Oliveras's home to rob him. Oliveras resisted and Petitioner's associate shot Oliveras twice; Oliveras subsequently died from his injuries. It is undisputed that Petitioner did not shoot Oliveras.

3

Before trial, Petitioner initially stated to the police and to a grand jury that he did not participate in the robbery. However, he eventually confessed to his participation. Furthermore, at trial, Petitioner admitted that he entered the victim's home to commit a robbery but testified that he only did so because one of the men involved, Richard Bermudez, threatened to harm him and his family if he did not participate. Petitioner further testified that, when he and Bermudez entered the victim's bedroom, Bermudez pointed a gun at the victim demanding money, at which point the victim slapped at the gun moving it away from his face. Petitioner restrained the victim; Bermudez then shot the victim, causing some of the victim's blood to splatter onto Petitioner. Petitioner said he then ran out of the house, returning to the getaway car.

Following a trial from January 11, 2010 to January 14, 2010, Petitioner was convicted of second-degree murder, third-degree murder, robbery and criminal conspiracy. He filed a direct appeal, which ended in April 2013, when the Pennsylvania Supreme Court denied allocatur. Next, Petitioner sought relief via a Post Conviction Relief Act ("PCRA") petition. His PCRA proceedings ended in June 2016, when the Pennsylvania Superior Court affirmed the denial of PCRA relief.

Petitioner filed a pro se habeas corpus petition in December 2016 and an amended petition. On October 31, 2018, Judge Wells filed a Report and Recommendation ("R&R") that habeas relief be denied. This Court approved and adopted the R&R on May 20, 2019, but did not grant a certificate of appealability. However, on appeal the Third Circuit granted a certificate of appealability for Petitioner's claim that, despite being eighteen (18) years old at the time of the offense, Petitioner should not have been subject to a mandatory life sentence. On July 7, 2022, the Third Circuit held Petitioner's appeal in abeyance and permitted him to file an amended habeas petition.

(See Doc. No. 40 at 1–2.)

In the Amended Petition, Petitioner raises the following grounds for relief:

 (1) The trial court failed to instruct the jury on the elements required to prove conspiracy, robbery, and second-degree murder;

 (2) The trial court opined that evidence was sufficient to prove certain facts;

(3) The trial court omitted a required element necessary to establish a finding of guilt of second-degree murder under a conspiracy theory of liability;

(4) When instructing the jury on duress, the trial court shifted the burden of proof to Petitioner; and

(5) The trial court's jury instructions improperly emphasized the Commonwealth's theory of Petitioner's guilt, thus reading more "like a roadmap to conviction than a neutral explanation of relevant legal concepts."

(Doc. No. 34 at 22–33.)

In the R&R, Judge Wells recommended that the Amended Petition be denied. (Doc. No. 40 at 1.) On October 10, 2025, Petitioner filed Objections to the R&R. (Doc. No. 43.) The Objections consist of the following:

1. The trial court committed instructional errors beyond omitting from its second degree murder instruction the element requiring that the killing have occurred in furtherance of the robbery;

2. Petitioner was prejudiced by this omission; and

3. A certificate of appealability should issue.

## III.    STANDARD OF REVIEW

### A.  Magistrate Judge's Report and Recommendation

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district court judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief. See 28 U.S.C. § 636(b)(1)(B); E.D. Pa. Civ. R. 72.1. Any party may file objections in response to the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1)(C). Whether an objection is made or not, a district judge "may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate judge with further instructions." Id. "[I]t must be assumed that the normal practice of the district judge is to

5

give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 784, 878 (3d Cir. 1987).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation. See E.D. Pa. Civ. R. 72.1. Under that rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations[,] or report to which objection s made and the basis for such objections." Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2021 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012). Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). De novo review is non-deferential and generally permits the district court to conduct an "independent review" of the entire matter. Salve Regina Coll. v. Russell, 499 U.S. 255, 238 (1991). "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

**B. Merits Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review will only be granted if: (1) the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the court's decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1)–(2). Determinations of factual issues made by a state court "are presumed to be correct and the petitioner bears the burden of rebutting this presumption by

6

clear and convincing evidence." Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)); see also Miller-El v. Cockrell, 537 U.S. 322, 340–41 (2003). The Supreme Court has defined clearly established law as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyear v. Andrade, 538 U.S. 63, 71–72 (2003).

A state court ruling is "contrary to" clearly established federal law for the purposes of § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams v. Taylor, 529 U.S. 362, 405–06 (2000). The Supreme Court has explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413–13 (2000).

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule from Supreme Court decisions, but "unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407–08. The state court's ruling must be "objectively unreasonable, not merely wrong." Virginia v. LeBlanc, 137 S.Ct. 1726, 1728 (2017) (internal citation omitted). As the Third Circuit has noted, "an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless the court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 411). Deference is given to state court rulings, and the application of the "contrary to" and "unreasonable application clauses" has proven to be "difficult to meet." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

This burden is substantial.  And under the AEDPA, review of state court legal and factual determinations is highly deferential.  See Palmer v. Hendricks, 592 U.S. 386, 392 (3d Cir. 2010) ("AEDPA requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations.")  If a state court did not adjudicate a claim on the merits, however, the deferential standard of the AEDPA does not apply.  Id.  Rather, in such cases, "the federal habeas corpus court must conduct a de novo review over pure legal questions and mixed questions of law and fact . . .."  Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

### C. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner must satisfy a two-prong test as set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Under this test, petitioner's counsel is presumed effective unless petitioner can show that: (1) counsel's "representation fell below an objective standard of reasonableness"; and (2) counsel's deficient performance prejudiced the petitioner.  Id. at 687–96.  When assessing counsel's reasonableness, the Supreme Court has recognized that "advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."  Id. at 681.  Both prongs of the Strickland test must be met to show a "reasonable probability that, but for [his counsel's] unprofessional errors, the result of the proceeding would have been different."  Id. at 687–88, 694. "Judicial scrutiny of counsel's performance must be highly deferential . . . [and a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.

Additionally, when a state court has already rejected an ineffective assistance of counsel claim, a federal court must defer to the previous decision, in accordance with 28 U.S.C. § 2254(d)(1).

> If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). Where the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable.

Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (per curiam) (citations omitted).

Although federal courts generally may not grant habeas corpus petitions unless "the applicant has exhausted the remedies available in the courts of the State," see 28 U.S.C. § 2254(b)(1)(A), "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, . . . counsel in that proceeding was ineffective." Martinez v. Ryan, 566 U.S. 1, 17 (2012). In other words, a court can analyze a habeas petitioner's ineffective assistance of counsel claim "only if there is sufficient cause to do so under Martinez." Gaines v. Superintendent Benner Twp. SCI, 33 F.4th 705, 710 (3d Cir. 2022) (citing Martinez, 566 U.S. at 14). As the court in Gaines explained:

> Sufficient cause exists [under Martinez] to review a defaulted claim for ineffective assistance of counsel if the petitioner shows that: (1) "the default was caused by ineffective assistance of post-conviction counsel"; (2) "in the initial-review collateral proceeding"; and (3) "the underlying claim of trial counsel ineffectiveness is substantial." Preston v. Superintendent Graterford SCI, 902 F.3d 365, 376 (3d Cir. 2018) (internal quotation marks omitted) (quoting Cox v. Horn, 757 F.3d 113, 119 (3d Cir. 2014)).

Id. at 710.

A claim is "substantial" if it "has some merit." Martinez, 566 U.S. at 14 (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that

9

jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 481 (2000)). If any of the three prongs are not met, then there is not sufficient cause for a district court to review the ineffective assistance of counsel claim presented in the habeas corpus petition.

However, if the underlying ineffective assistance of counsel claim fails on the merits, there is no need to consider whether the three Martinez prongs are met. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also Roman v. Diguglielmo, 675 F.3d 204, 209 (3d Cir. 2012) ("Because we will deny [petitioner's] claims on the merits, we need not address the issue of exhaustion in this case.")

In the R&R, Judge Wells noted that:

> The Commonwealth opposed the Petitioner's claim on numerous grounds, including procedural default and lack of merit. In his reply, Petitioner concedes that his claim is procedurally defaulted but contends that the default can be excused under Martinez v. Ryan, 566 U.S. 1 (2012). Rather than engage in the cumbersome analysis Martinez requires, the undersigned has reviewed Petitioner's ineffective assistance claim on its merits and finds that it lacks merit.

(Doc. No. 40 at 3.)

As discussed below more thoroughly, the Court agrees that Petitioner's ineffective assistance claim lacks merit. Thus, a Martinez analysis addressing procedural default is unnecessary.

## IV.   ANALYSIS

Petitioner argues that trial counsel was ineffective in failing to raise an objection to the trial court's jury instructions, each of which Petitioner contends were defective. (Doc. No. 43 at 6.) Petitioner also objects to Magistrate Judge Wells' conclusion that the instruction on second-degree murder was defective because of the omission of the element that the killing must have occurred

in furtherance of the robbery.  (Id. at 11.)  Petitioner further objects to Judge Wells' finding that

this omission was harmless to Petitioner.  (Id. at 21.)  Finally, Petitioner argues that, at a minimum,

a Certificate of Appealability should issue.  (Id. at 26.)  The Court will first address Petitioner's

Objections regarding the second-degree murder charge and then discuss Petitioner's other

Objections.

### A.  Petitioner was not Harmed by the Defective Second-degree Murder Instruction

In the Amended Petition, Petitioner initially claimed that the trial court's instructions on

second-degree murder omitted the element which requires that the killing occur in furtherance of

the robbery, or the attempt to commit the robbery.  (Doc. No. 34 at 27.)  Judge Wells agreed that

this instruction was defective for the same reason and therefore violated Petitioner's due process

rights.  (Doc. No. 40 at 8.)  However, Judge Wells ultimately held this error harmless and non-

prejudicial to Petitioner because "Petitioner's admitted conduct clearly satisfies the definition of

second-degree murder contained in the statute and demonstrates, beyond any question, that the

killing took place in furtherance of the attempt to rob the victim…."  (Id. at 9.)

### 1.  Magistrate Judge Carol Wells's Holding that the Trial Court's Error was Harmless is Correct

The trial court's error in omitting the "in furtherance" element is subject to harmless error

review.  Smith v. Horn, 120 F.3d 400, 416–17 (3d Cir. 1997).  The Third Circuit Court of

Appeals has explained that

> [c]onstitutional errors have been categorized as one of two types:
> structural error or trial error.  A structural error is a defect in the
> trial mechanism itself, affecting the entire trial process, and is per
> se prejudicial.  Trial error occurs during the presentation of the
> case to the jury, and may be qualitatively assessed in the context of
> all other evidence.  Thus, trial errors are subject to a harmless error
> analysis.

Id.  Most importantly, the Supreme Court has "characterized an error in the instruction that defined the crime" as a trial error as opposed to a structural error.  Id. at 417 (quoting California v. Gilroy, 519 U.S. 2, 5 (1996)).

In a habeas case, the harmless error standard requires the reviewing court to decide whether the constitutional error had "substantial and injurious effect or influence in determining the jury's verdict."  Id. at 417–18 (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).  "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice."  Brecht, 507 U.S. at 637 (citing United States v. Lane, 474 U.S. 438, 449 (1986)).  Judge Wells determined that the error was harmless because Petitioner admitted his participation in attempting to rob the victim and therefore Petitioner was not subjected to actual prejudice.  (Doc. No. 40 at 9.)  This Court agrees.

In his Objections, Petitioner contends that Judge Wells erred in applying harmless error review because the second-degree murder instructional error should be considered structural.  (Doc. No. 43 at 22–23.)  Petitioner asserts that, "[w]here the error consists of the failure to instruct on an element of a crime in its entirety, no 'object' exists on which harmless or plain error analysis can operate," and therefore "such errors are properly analyzed as structural."  (Id.) (relying on Sullivan v. Louisiana, 508 U.S. 275, 280 (1993) (finding incorrect reasonable doubt instruction a structural error not subject to harmless error review)).  Additionally, Petitioner asserts that even when applying the Brecht standard, noted above, the error here was still harmful.  (Doc. No. 43 at 23.)  Petitioner also argues that the relevant inquiry is whether the error itself – notwithstanding the sufficiency of the evidence – had a substantial influence on the verdict.  (Id.) (citing Yohn v. Love, 76 F.3d 508, 523 (3d Cir. 1996)).  Petitioner further contends

12

that, independent of the instructional error, "it cannot be fairly inferred that the jury necessarily found facts to establish beyond a reasonable doubt that the killing was committed in furtherance of the attempted robbery." (Id. at 24.)

Here, as Judge Wells noted, and this Court agrees, the trial court's failure to instruct the jury on one of the elements of felony murder violated Petitioner's due process rights. However, that failure was not a structural error and is subject to harmless error review under Brecht.

As discussed supra, there are two types of constitutional errors regarding jury instructions that omit or misdescribe an element of an offense: "trial errors," which are subject to harmless error analysis, and "structural errors," which are per se prejudicial. Smith v. Horn, 120 F. 3d 400, 416 (3d Cir. 1997). Trial errors occur during the presentation of the case to the jury "and may be qualitatively assessed in the context of all other evidence." Id. Conversely, structural errors are defects in the trial mechanism itself and affect the entire trial process. Id. In considering habeas petitions, reviewing courts must determine whether errors omitting or misdescribing elements of offenses are either structural or trial errors and what standard of review is appropriate. Id. at 416–17.

With respect to Petitioner's Objection that Judge Wells erred in failing to apply structural error review, his reliance on Sullivan is misplaced. In Sullivan, the petitioner was convicted of first-degree murder—and sentenced to death—upon trial court instructions of reasonable doubt nearly identical to instructions that the Supreme Court had held unconstitutional in Cage v. Louisiana, 498 U.S. 38 (1990). 508 U.S. 275, 276–77 (1993). The Court in Sullivan noted that the Fifth Amendment, which requires proof beyond a reasonable doubt, and the Sixth Amendment, which requires a jury verdict, are intertwined. Id. at 278. Thus, it would not satisfy the requirements of the Sixth Amendment to find a defendant is "probably guilty" and then leave

13

it to the judge's discretion whether that defendant is guilty beyond a reasonable doubt. Id. Put differently, "the jury verdict required by the Sixth Amendment is a verdict of guilty beyond a reasonable doubt." Id. The Court explained that under its previous decision in Chapman v. California, the question a reviewing court must consider "is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand." Id. at 279 (citing Chapman v. California, 386 U.S. 18, 24 (1967)). Thus, harmless-error review looks at the basis on which the "jury actually rested its verdict." Id. (emphasis in original). In sum, "the inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Id. The Court went on to note that "denial of the right to a jury verdict of guilt beyond a reasonable doubt is certainly a [] [structural error]" Id. at 281. Thus, the Court ultimately concluded that because, in the petitioner's case, there was no jury verdict within the meaning of the Sixth Amendment—as the trial court relied on unconstitutional reasonable doubt instructions—"the illogic of harmless-error review…becomes evident." Id. at 280.

At issue in Petitioner's Objection is whether the jury instructions given by the trial court on the second-degree murder charge were defective—not whether Petitioner was ultimately deprived of a jury verdict within the meaning of the Sixth Amendment. Compare Sullivan, 508 U.S. at 279–81 with Petitioner's Objections (Doc. No. 43). For this reason, the trial court's error is not structural and harmless error review is warranted.

With regard to the application of harmless error review, the law has been aptly summarized in Phillips v. Diuglielmo, 592 F. Supp. 2d 809 (E.D. Pa. 2008). There, the court considered Petitioner Stanley Phillips's Objections to a Report and Recommendation that

14

recommended dismissing Petitioner Phillips's habeas petition with prejudice.  Id. at 810.  The

crux of the issue raised by Petitioner Phillips in his Objections was that the trial court failed to

instruct the jury on the element of "force," a required element of the offense of robbery of a

motor vehicle.  Id.  In considering Petitioner Phillips's Objections, the court highlighted that:

> Assuming that failing to instruct the jury that force is an element of robbery of a motor vehicle was an error of constitutional law, a harmless error analysis is appropriate for habeas review.  Smith v. Horn, 120 F.3d 400, 416 (3d Cir. 1997).  The harmless error standard in a collateral proceeding is 'whether the error had substantial and injurious effect or influence in determining the jury's verdict.'  Id. at 417.  In Horn, the Third Circuit considered that omission of an element of an offense may be a structural error, which is per se prejudicial, despite holding that jury instructions that did not require the Commonwealth to prove specific intent in order to convict the defendant of first-degree murder were subject to a harmless error analysis.  Three years after Horn, the Supreme Court held that harmless error analysis is appropriate for the omission of an element of a crime in a jury instruction on appellate review.  Neder v. United States, 527 U.S. 1, 15 (1999).  '[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.'  Id. at 17.  Based on Horn and Neder, a harmless error analysis of the jury instructions is appropriate for collateral review in this case.

Id. at 811.

The Phillips court ultimately concluded that because the evidence against Petitioner

Phillips was overwhelming, any error by the trial court in failing to instruct the jury on the

element of force was harmless because the verdict would have been the same even if the omitted

instruction had been given.  Id.

Much like Phillips, here, as Judge Wells found, the verdict on the second-degree murder

charge would have been the same even if the trial court had instructed the jury that second-

degree murder requires that the killing occur in furtherance of the robbery, or the attempt to commit the robbery.  Pennsylvania defines second degree murder, also known as felony murder, as follows: "[a] criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony."  18 Pa. Cons. Stat. Ann. § 2502(b).  Pennsylvania also defines the perpetration of a felony as "[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviant sexual intercourse by force or threat of force, arson, burglary, or kidnapping."  18 Pa. Cons. Stat. Ann. § 1502(d).  Further, Pennsylvania decisional law requires that, for a defendant to be guilty of second-degree murder when he did not kill the decedent, (1) the defendant's associate must have caused the victim's death and (2) the killing must have been in furtherance of the underlying felony or an attempt to commit it.  Commonwealth of Pennsylvania v. Waters, 418 A.2d 312, 316–17 (Pa. 1980).

Here, Petitioner admitted that he participated in the attempt to rob the victim, Oliveras. (Doc. No. 40 at 9.)  Critically, Petitioner also stated that: (1) he and an armed associate entered Oliveras's home with the intention to rob Oliveras, (2) during the attempt to rob Oliveras, Oliveras resisted, (3) Petitioner then restrained Oliveras, and (4) the armed associate then shot and killed Oliveras.  (Id.)  By virtue of his own admission, Petitioner's conduct satisfies what is statutorily required for second degree murder and makes clear that Oliveras's killing was in furtherance of the attempt to rob him—as required by Pennsylvania decisional law.  Thus, Petitioner's own admitted conduct outweighs any contention that omitting the "in furtherance" element from the second-degree murder instruction had a substantial and injurious effect on Petitioner, such that the jury's verdict would have differed due to the instructional error alone.  Accordingly, the trial court's

16

error was harmless, and no relief is warranted on the Objection to Judge Wells's recommendation that the second-degree murder conviction not be vacated.

### B.  Petitioner's Ineffective Assistance of Counsel Claims are Meritless

Federal courts are required to give deference to the state court's findings regarding ineffective assistance of counsel on habeas review.  Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).  And, as noted earlier, ineffective assistance claims are governed by the two-prong "performance and prejudice test" established in Strickland v. Washington, 466 U.S. 668 (1984).  First, the performance prong requires Petitioner to demonstrate that counsel's assistance fell below an objective standard of reasonableness.  Id. at 687.  Second, the prejudice prong requires Petitioner to demonstrate that "but for [his counsel's] unprofessional errors, the result of the proceeding would have been different."  Id. at 687–88, 694.  In Strickland, the court held "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  Id. at 697.

### 1.  Claimed Instructional Error: Defining Elements and Burden of Proof

Petitioner argues that his counsel was ineffective for failing to object to the trial court's jury instructions on conspiracy, robbery, and second-degree murder.  (Doc. No. 43 at 6–15.)  More specifically, Petitioner contends that the trial court's deviation from the Pennsylvania Suggested Standard Criminal Jury Instructions rendered the instructions deficient.  (Id.)  With respect to the conspiracy instruction, Petitioner's objection to the R&R states that the trial court "touched on relevant concepts but failed to identify those concepts as elements the Commonwealth was required to prove beyond a reasonable doubt."  (Id. at 9 n.6.)  Petitioner additionally avers that the robbery instruction did not clearly state either element of the offense and similarly omitted reference to the Commonwealth's burden of proof.  (Id. at 10.)   Petitioner

further argues that the "imprecise language" of the second-degree murder instruction "failed to clearly define the element of malice." (Id. at 12.)  Lastly, Petitioner claims that any clarification the court provided regarding the elements and the burden of proof came far too late to cure any earlier deficiencies.  (Id. at 13.)

The record demonstrates, and Petitioner concedes, that the trial court instructed the jury on the Commonwealth's burden of proof on multiple occasions.  (Doc. No. 40 at 5) (citing Jan. 14, 2010 Trial Trans. at 72–73.)  As such, trial counsel's omission of what would have been a meritless objection was reasonable.  Moreover, as Judge Wells noted, Petitioner did not identify which elements were actually missing from the charged offenses "means that trial counsel cannot be held ineffective." (Id.)  Regardless of the clarity of Petitioner's claims, to the extent Petitioner is arguing the trial court's instruction on second-degree murder was defective for not including the "in furtherance" language, this error has already been found harmless and therefore the second element of the ineffective assistance of counsel standard requiring a showing of prejudice is not met.   Moreover, the trial court did instruct the jury on the element of malice. (See Jan. 14, 2010 Trial Trans. at 85–88.)  Finally, the trial court's clarification as to the elements of the offenses and burden of proof that the jury was to apply to them cured any deficiencies such that the outcome is unlikely to have been different.  This claim therefore fails the second or prejudice prong of the Strickland test.

### 2.  Claimed Instructional Error: Invading Province of Jury

Petitioner next contends that his counsel was ineffective in failing to object when the trial court improperly expressed its own opinion that the Commonwealth had proven certain facts, thus invading the province of the jury to finds the facts in this case.  (Doc. No. 43 at 15–16.) Petitioner first asserts that, while instructing the jury on robbery and conspiracy, the trial court stated there was "no question" that Oliveras died as a result of the gunshot wounds but then

clarified: "I shouldn't say that. You're free to make that determination for yourself." (Id. at 10 n.7.)  Additionally, Petitioner avers that the trial court compelled the jury to find that the shooter intentionally shot Oliveras in the chest by telling the jury that they "[could] consider the fact that the shooter intentionally used a deadly weapon" on a vital part of the Oliveras's body, specifically the chest area, to determine that the malice required for third degree murder was established.  (Id. at 16.)

As to the first argument, Judge Wells found this claim meritless because "[i]t is quite obvious to this court, as it no doubt was to the jury, that the victim died as a result of the gunshot wounds he suffered at the hands of Petitioner's confederate" and further, "the trial court corrected any misunderstanding it might have conveyed by instructing the jury … that it was free to decide whether the victim died from the gunshot wounds." (Doc. No. 40 at 6.)  Judge Wells also found Petitoner's second argument meritless because "[a]ny rational person, faced with the factual scenario presented in this case, could reasonably conclude that the victim's shooting was intentional, not accidental." (Id. at 7.)  This Court agrees with both of Judge Wells's findings.

In his Objections, Petitioner argues that these instructions "could only be understood by the jury as placing the matters discussed beyond reasonable dispute." (Doc. No. 43 at 16.)  However, the trial court corrected any misunderstanding it may have conveyed by specifically informing the jury that it was their responsibility to decide whether Oliveras died from the gunshot wounds.  (See Doc. No. 40 at 6.)

The jury is presumed to have followed that instruction.  Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (presuming jury to follow court's instructions absent "overwhelming probability" that they would not be able to do so).  Petitioner's claim therefore lacks merit because trial counsel acted reasonably by omitting any objection.  Moreover, as Judge Wells emphasized, it is

undisputed that Petitioner's associate shot Oliveras twice in the torso and that he died within one hour of arriving at the hospital. (Doc. No. 40 at 6.) As such, it is unlikely that the jury would have reached a different conclusion as to whether Oliveras died from the gunshot wounds or another cause. Accordingly, Petitioner's claim of ineffective assistance of counsel not only fails the prejudice prong of the Strickland test, but also on the performance prong. No need arose here for Petitioner's trial counsel to object to the court's challenged instruction.

### 3.  Instructional Error: Second-Degree Murder

Though Judge Wells found that the trial court's second-degree murder instruction omitted the element that the killing must have occurred in furtherance of the robbery, Petitioner reasserts that his trial counsel was ineffective in not objecting to this instruction because it failed to clearly state any of the elements that the Commonwealth was required to prove beyond a reasonable doubt. (Doc. No. 43 at 11). Petitioner argues that the definition of malice[1] was insufficient because, in deviating from the standard instruction, "[t]he court's imprecise language failed to clearly define the element of malice." (Id. at 12.) Petitioner further asserts that deviation from the standard instructions rendered all elements of second-degree murder inadequately defined. (Id.)

In order to evaluate the merits of Petitioner's contentions regarding the second-degree murder charge and the definition of malice, a recitation of the jury instructions at issue is helpful. The jury instructions regarding second-degree murder and malice read at length as follows:

> Now, if I talk about felony murder and murder in the third degree I have to talk about malice. And malice is an element of murder [sic] both degrees, it doesn't make any difference. A person who kills must act with malice to be guilty of any degree of murder.

---

[1]  See Doc. No. 43 at 12.

20

The words malice as I'm using it has a special legal meaning. So you have to consider the legal meaning.

Malice is a shorthand way of referring to any of three different mental states that the law regard as being bad enough to make a killing murder.  So the degree of malice differs from first degree to second degree to third degree.

All killings are with malice if the perpetrator engages in one of a certain enumerated number of felonies and a killing occurs.  Again, the Commonwealth doesn't say Mr. Jones shot Mr. Oliveras.  They say the person he was with shot him.  And that Mr. Jones is liable on either a conspiracy and/or accomplice liability theory involved in that shooting.  So for murder in the second degree[,] it has to be during the commission of one of the particular felonies.  I tell you as a matter of law robbery is one of those felonies.  So[,] if someone dies during the commission of a felony that can be second degree murder.  So a killing is with malice if the defendant[,] or someone he is acting[,] with pursuant to an agreement[,] which would be the conspiracy[,] or an accomplice with the intent to facilitate and someone dies, Mr. Oliveras dies, allows you to [sic] finder of fact infers [sic] that the killing was malicious from the fact that the actor[,] either Mr. Jones or the other person [,] was engaged in a felony of such dangerous nature to have a human life, they knew under the standard of a reasonable opinion that death might result.

So let's try and break this down and try to make it as simple as I can.  If you find that the robbery was being committed and if you find that Mr. Oliveras died during the commission of the robbery, then you may infer from that fact that malice has been established by the Commonwealth because it is the knowing, the standard of a reasonable person that, often times, in an attempt to take a person's property the person will resist if you have a weapon with you.  And the person resisting it is understanding that you might use that weapon and that weapon might result in the death of the person whose property you are trying to take.  And that a reasonable person would know of, should have known[,] that this was a likely consequence of attempting to take his property by force.

That is what the Commonwealth contends in this case[,] that when the defendant and the other person entered with the intent to commit the robbery, the other person had a weapon, that Mr. Oliveras could be as inferred, wasn't going to give up whatever it is they were asking of him.  And that weapon might then be used and that weapon might result in the death of Mr. Oliveras.

And if all those factors, a reasonable man reasonable person standard would know or should have known that that was a likely

outcome.  And if the outcome occurs, then the Commonwealth has
established the malice necessary to establish felony murder or the
death during the commission of a robbery.

(Jan. 14, 2010 Trial Trans. at 85–88).

Petitioner stresses that the standard criminal homicide instruction defines malice for

murder in the second degree as "a killing is with malice if the perpetrator engages in one of

certain enumerated felonies and a killing occurs, since the law, through the felony murder rule,

allows the finder of fact to infer that the killing was malicious from the fact that the actor was

engaged in a felony of such dangerous nature to human life that the perpetrator, as held to the

standard of a reasonable man, knew or should have known that death might result from the

felony."  (Doc. No. 43 at 11 (citing Pa. SSJI (Crim), § 15.2501A (Criminal Homicide) (2024)).

While Petitioner is correct that the jury instructions given at his 2010 trial did not follow the

standard criminal instructions to the letter, the instructions were nonetheless sufficient to convey

what was necessary to a finding of malice for murder in the second degree.  For example, the

trial court explained that:

> If you find that the robbery was being committed and if you find
> that Mr. Oliveras died during the commission of the robbery, then
> you may infer from that fact that malice has been established by
> the Commonwealth because it is the knowing, the standard of a
> reasonable person that, often times, in an attempt to take a person's
> property the person will resist if you have a weapon with you.  And
> the person resisting it is understanding that you might use that
> weapon and that weapon might result in the death of the person
> whose property you are trying to take.  And that a reasonable
> person would know of, should have known[,] that this was a likely
> consequence of attempting to take his property by force.

(Jan. 14, 2010, Trial Trans. at 86–87.)  While not a verbatim recitation of the standard criminal

homicide instruction for malice for murder in the second degree, the trial court's instructions are

a close match.  Failing to object to jury instructions that are substantively similar to, but not

exactly the same as, the standard criminal homicide instructions for malice does not fall below

22

the objective standard of reasonableness required by the first prong of Strickland.  See Strickland v. Washington, 466, U.S. 668, 687 (1984) (explaining that to demonstrate counsel's performance was deficient, there must be a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.")  As such, trial counsel acted reasonably in not objecting to the jury instructions on malice.  Moreover, even assuming arguendo Petitioner cleared the hurdle imposed by Strickland's first prong, as addressed in detail supra, the outcome of the trial would have been the same by virtue of Petitioner's own admitted conduct.  Thus, there was no prejudice, a requirement of the second Strickland prong.  Accordingly, Petitioner's claim for ineffective assistance of counsel on the second-degree murder charge is meritless.

### 4.  Instructional Error: Burden of Proof on the Defense of Duress

Petitioner next asserts that his trial counsel was ineffective for not objecting when the trial court incorrectly suggested Petitioner had the burden of proof when initially defining the concept of duress.  (Doc. No. 43 at 16.)  Judge Wells found this claim meritless because, while the trial court initially did not refer to any burden of proof when explaining duress, its complete explanation "clearly told the jury that the Commonwealth had the burden to disprove duress beyond a reasonable doubt."  (Doc. No. 40 at 10.)  This Court agrees.

In the Objections to the R&R, Petitioner argues that the trial court's instruction, "it is the Commonwealth's burden to disprove duress by proof beyond a reasonable doubt," as opposed to "you cannot find the defendant guilty of the charged crimes unless you are satisfied beyond a reasonable doubt that the defendant did not act under duress…," undermined the Commonwealth's burden of proof to disprove duress beyond a reasonable doubt.  (Doc. No. 43 at 17.)  The trial court's complete explanation stated: "Now the Commonwealth has the burden of disproving the defense of duress. So it has this burden, again, by proof beyond a reasonable

23

doubt." (Doc. No. 40 at 10 n.10.) As Judge Wells observed, this remedied any initial failure to mention this burden of proof and therefore was sufficient to properly instruct the jury. (Id. at 10.) Accordingly, any objection to this instruction would have been meritless. Thus, Petitioner cannot satisfy the first prong of the Strickland test because trial counsel acted reasonably in not making a meritless objection.

### 5. Instructional Error: Failure to Maintain Neutrality

Petitioner next argues that his trial counsel was ineffective because, throughout the jury instructions, the trial court failed to maintain neutrality because it emphasized the Commonwealth's theory of prosecution when explaining the relevant legal principles at issue in the case, to which Petitioner's counsel did not object. (Doc. No. 43 at 20.) Judge Wells rejected this claim as meritless, noting that "it is often the case that the court will use the parties' theories and the facts presented in order to provide context for the [jury] instructions[.]" (Doc. No. 40 at 10.) Moreover, the trial court explicitly reminded the jury "not to place any emphasis on the facts I'm going to discuss." (Doc. No. 43 at 20.) Once again, the jury is presumed to have followed this instruction. Greer, 483 U.S. at 766 n.8 (1987).

In his Objections, Petitioner reasserts that the instructions "put undue emphasis on the Commonwealth's theory of guilt," and "unfairly influenc[ed] the jury's evaluation of the evidence." (Doc. No. 43 at 20.) Petitioner contends that the trial court's reminder to the jury failed to prevent harm because it "said nothing about the party and theory the court's instructions favored." (Id.) However, as Judge Wells acknowledged, the prosecution is often the only party presenting a coherent theory of the case because it has the burden of proof. (Doc. No. 40 at 11.) In this case, Petitioner did not dispute his role in the homicide but instead testified that his participation was the result of threats made by his associate. (Id.). The trial court therefore permissibly used the Commonwealth's theory to provide context for the jury. Simply listing the

24

elements of each charged offense and other relevant legal principles, like the burden of proof, without also providing any context "would have likely left the jury befuddled." (See Doc. No. 40 at 11.)  Accordingly, the allegation that the trial court failed to maintain neutrality is meritless. Thus, trial counsel acted reasonably by failing to object.

### C. Reasonable Jurists would not Debate the Denial of Petitioner's Ineffective Assistance of Counsel Claim

Finally, in his Objections to the R&R, Petitioner argues that a certificate of appealability should issue because "[r]easonable jurists [could] debate the correctness of Judge Wells' analysis of [Petitioner's] ineffective assistance of counsel claim." (Doc. No. 43 at 26).  However, as Judge Wells acknowledged, a de novo review of Petitioner's claims reveals their lack of merit and reasonable jurists therefore "would not debate this court's disposition of Petitioner's claim." (Doc. No. 40 at 12) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  The Court agrees.

### V.    CONCLUSION

For the foregoing reasons, the Court will overrule Petitioner's Objections to Judge Wells's Report and Recommendation (Doc. No. 43), approve and adopt Magistrate Judge Wells's Report and Recommendation (Doc. No. 40), and deny the Petition for Writ of Habeas Corpus (Doc. No. 34).  Moreover, no Certificate of Appealability will be issued.